```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW HAMPSHIRE
```

Kurt West

    v.                                  Civil No. 10-cv-214-JL

Bell Helicopter
Textron, Inc. *et al*.

**SUMMARY ORDER**

This is a products liability case arising out of a helicopter accident.  The pilot, Kurt West--who survived the crash but was injured--has sued the manufacturer of the helicopter, Bell Helicopter Textron, Inc., the manufacturer of its engine, Rolls Royce Corporation, and the manufacturer of certain other components, Goodrich Pump & Engine Control Systems, Inc.  This court has jurisdiction over this action between West, a Massachusetts citizen, and the defendants, foreign corporations, under 28 U.S.C. § 1332(a)(1) (diversity).

During the late spring and early summer of 2012, the parties submitted six different motions seeking to resolve discovery disputes that had arisen.  After some prodding from the court, however, see Order of July 20, 2012, Order of January 4, 2013, counsel informed the Deputy Clerk that the parties had resolved a number of the issues presented by the motions.  The court proceeded to deny the motions as moot, see Order of Feb. 1, 2013, subject to the defendants' right to file a renewed motion for a

protective order ruling that they had properly designated certain documents they produced in this litigation as "confidential." (That is, there is no dispute over whether the documents should be produced--they already have been--only over whether the plaintiff can share them with third parties beyond his attorneys and experts in this litigation.)  One of the defendants, Goodrich, subsequently notified the court that it did not wish to renew its motion for a protective order.  Another defendant, Rolls-Royce, renewed its motion for a protective order as to certain documents; the plaintiff renewed its objection; and Rolls-Royce renewed its reply.  After reviewing those submissions, the court denies Rolls-Royce's motion for a protective order.

Early in the case, the parties agreed on a protective order to govern discovery.  Order of May 19, 2011 ("Protective Order"). Under the Protective Order, a party may designate information produced in discovery as "Confidential," with the result that it "shall not be disclosed to any person or entity" except, in general, to the parties, their attorneys, and others involved in this litigation, to be "used solely for the purposes of this litigation."  The Protective Order, however, does not allow the designation of discovery materials as "Confidential" unless they "constitute (a) trade secrets, (b) other proprietary information

2

(including research, development, or commercial information), or (c) medical, financial, or other private information that would create a risk of embarrassment to the plaintiff if disclosed."

The Protective Order sets forth a procedure for one party to dispute another party's confidentiality designations as to documents it produced by filing a "Notice of Disagreement." After that happens, the producing party must, among other things, "file a motion . . . seeking to sustain its burden of proof that the documents are, in fact, entitled to confidentiality under the provisions of this Order, [or] New Hampshire or other applicable law." To that end, Rolls Royce has filed a motion attempting to make that showing as to documents identified in the plaintiffs' notice of disagreement. Surprisingly, however, Rolls Royce has not submitted any of those documents to the court, nor provided more than a conclusory description of any of them. While Rolls Royce, in its motion, offers to produce the documents for in camera inspection at the request of the court, it is up to the defendants, not the court, to decide what materials to submit in order to show their entitlement to discovery relief. See Rockwood v. SKF USA, Inc., 2010 DNH 171, 19 n.10.

Rolls Royce describes the information in its allegedly confidential documents only through a series of generalizations:

3

> trade secrets, confidential investigation files, plans
> and recommendations for product improvements, technical
> and proprietary information related to the calculation
> of certain failure probabilities, technical and
> proprietary information related to the estimates and
> assumptions used to formulate failure probabilities,
> technical and proprietary discussions of the risks and
> benefits of decisions related to products.

This description is accompanied by a series of footnotes referencing each disputed document, but those are equally vague, e.g., memoranda "regarding the accuracy of an assumed value used in calculating the likelihood of certain events, and outlining a potential means of determining the accuracy of the assumed value," or "outlining a particular hazard, potential solutions and their risks and benefits, and the Rolls-Royce decision process related to the issue."  Given the opacity of these descriptions, the court simply cannot tell whether the information in these documents "constitute[s] trade secrets [or] other proprietary information (including research, development, or commercial information)" so that they can be properly designated as "Confidential" under the Protective Order or, for that matter, any other applicable law.[1]

---

[1] In defining confidential information, the Protective Order tracks Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, under which a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed."  Importantly, Rule

It is conceivable that Rolls Royce's methods of analyzing failures in its own products could amount to proprietary information in that those methods "help [it] to develop and design new and improved products thus allowing [it] to obtain a significant commercial advantage."  Culinary Foods, Inc. v. Raychem Corp., 151 F.R.D. 297, 303 (N.D. Ill. 1993).  But Rolls Royce does not say that.  It is also conceivable that information as to potential product improvements could be proprietary in that, if disclosed, it would give competitors "free access to information which [Rolls Royce] has spent a great deal of time and money producing and protecting," costing it the "competitive advantage it has obtained from this information."  Id. at 305.  But Rolls Royce does not say that either.

All Rolls Royce says is that it "makes efforts to protect the confidentiality of its business structure, its internal methods, its technology, its analysis and plans related to the technology, and its trade secrets."[2]  This seems to suggest that

---

26(c), like the Protective Order, puts the burden on the party seeking protection to show cause for it.  See Anderson v. Cryovac, Inc., 805 F.2d 1, 7-8 (1st Cir. 1986).

[2]Rolls Royce states that "[t]he format and title and contact information contained in the memos provide valuable information to potential competitors about the structure, hierarchy, and relationships within and between these two companies."  The sole memorandum submitted to the court, however, merely lists the author, senders, and recipients, identifying them by first and

5

every aspect of Rolls Royce's business is confidential and proprietary, which by its nature is simply implausible. See Beane v. Beane, 856 F. Supp. 2d 280, 304 (D.N.H. 2012) (rejecting business owner's claim "that all information in or about its product is a trade secret") (bracketing and quotation marks omitted). Moreover, Rolls Royce does not explain how disclosure of the documents at issue would threaten the claimed confidentiality of any of these subjects (the plaintiff, for his part, dismisses that possibility, asserting that the disputed documents "about component failure rates and proposed solutions" concern a part that Rolls Royce began using in its helicopter engines in 2010, so that its plans for introducing the part, and its design, were publicly disclosed long ago). In any event, the court cannot meaningfully address such an argument without looking at the documents themselves which, again, Rolls Royce has not submitted.

Rolls Royce also argues that the documents "relate to incidents, hazards, and probabilities of different hazards," which it "and its business partners, in order to adequately

---

initial and last name only, without identifying their titles, departments, position within their company's "hierarchy," or anything else about the "structure" of or "relationships" within either company. It is exceedingly difficult to see how the last names of a few of a company's employees could amount to proprietary information.

ensure the safety of operators and the general public, need the ability to address . . . with honesty and frankness." But Rolls Royce does not explain how that purpose, however laudable, transforms these communications into trade secrets or other proprietary information so as to warrant confidentiality under the Protective Order.

Instead, Rolls Royce suggests that this brings the documents within the aegis of the "self-critical analysis" privilege. As Rolls Royce acknowledges, however, it sought to assert that privilege in response to a motion to compel the plaintiff previously filed in this case, but the court ruled that Rolls Royce had waived it by failing to raise the privilege either in Rolls Royce's formal responses to the plaintiff's first set of document requests or in connection with a discovery conference with the court "at which the defendants' relevance objections to the same requests were extensively discussed." West v. Bell Helicopter Textron, Inc., 2011 DNH 217, 19-20. Rolls Royce did not appeal that order, but complied by producing the very documents Rolls Royce had claimed were protected by the self-critical analysis privilege. So Rolls Royce cannot resurrect its privilege claim now by claiming that the same concerns which (in its view) support the privilege amount to good cause for the

7

issuance of a protective order.[3]  In any event, that a "company fears public embarrassment," or even "groundless litigation," from the disclosure of its own reports of problems with its products is not good cause for the issuance of a protective order.  See Nicklasch v. JLG Indus. Inc., 193 F.R.D. 570, 574 (S.D. Ind. 1999).

The court of appeals has made clear that, rather than relying on "conclusory statements," a party seeking a protective order must "make a specific demonstration of necessity for" it. Anderson, 805 F.2d at 7.  Rolls Royce has not carried that burden.  Accordingly, its motion for a protective order upholding its confidentiality designations as to the documents identified by Bates number therein (document no. 133) is DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  February 27, 2013

cc: Joan A. Lukey, Esq.
    Sara Gutierrez Dunn, Esq.

---

[3] Indeed, Rolls Royce does not say that the court was wrong to find a waiver of the self-critical analysis privilege, nor does it provide any authority or developed argument for recognition of such a privilege under New Hampshire law.

```
John P. O'Flanagan, Esq.
L. Robert Bourgeois, Esq.
Martha C. Gaythwaite, Esq.
Brian M. Quirk, Esq.
James C. Wheat, Esq.
Jason L. Vincent, Esq.
Pierre A. Chabot, Esq.
Phillip S. Bixby, Esq.
Marie J. Mueller, Esq.
```