UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Kurt West

     v.                        Civil No. 10-cv-214-JL
                                     Opinion No. 2017 DNH 017
Bell Helicopter Textron, Inc.,
Goodrich Pump and Engine
Control Systems, Inc., and
Rolls-Royce Corp.

**MEMORANDUM ORDER**

Before the court is plaintiff Kurt West's motion for a new
trial, after a remand of the initial denial of that motion,
followed by newly-disclosed instances of improperly withheld
discovery. The question is whether these violations of the
defendants' obligations to supplement their discovery responses,
see Fed. R. Civ. P. 26(e)(1), discovered both before and after
the appeal, entitle West to a new trial. The court finds that a
new trial is warranted under the applicable precedent of the
Court of Appeals, and thus orders a new trial.

In December 2008, a helicopter piloted by West suffered a
hard landing in Bow, New Hampshire.[1] He brought this action

---

[1] The facts underlying this action have been thoroughly discussed
in several previous orders of this court, and by the Court of
Appeals. See West v. Bell Helicopter Textron, Inc. ("West I"),
2014 DNH 208, 1-4; West v. Bell Helicopter Textron, Inc., 803
F.3d 56, 58-62 (1st Cir. 2015). The court does not repeat them
here, except as relevant to West's motion for a new trial.

against the helicopter's manufacturer, Bell Helicopter Textron, Inc., the engine's manufacturer, Rolls-Royce Corporation, and Goodrich Pump and Engine Control Systems, Inc. ("Goodrich" or "GPECS"), the corporate successor to the entity that manufactured two components central to this litigation -- the engine's electronic control unit (ECU) and full authority digital engine control (FADEC).

West claimed that the ECU of his Bell 407 falsely registered an "overspeed" event (i.e., the rotor was spinning too fast), triggering the closure of a fuel shutoff valve, or solenoid -- a phenomenon known as "false overspeed solenoid activation," or "FOSSA." This, in turn, caused the engine to lose power or "flame out," forcing West to land the helicopter unexpectedly on a residential street through a technique known as "autorotation," resulting in his injuries. The defendants agreed that the engine flamed out, but contended that it did so because it ingested ice or snow that West and a co-worker had failed to properly clean from the helicopter before West's flight. After extensive discovery and a three-week trial, the jury returned a verdict for the defendants. The court entered judgment accordingly.

After the trial, West sought relief from that judgment and a new trial, invoking, inter alia, Federal Rule of Civil Procedure 60(b)(3). That rule provides in pertinent part: "On

motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . fraud . . . misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). As the alleged misconduct on which he based his request for relief from the judgment, West complained that the defendants withheld documents and information concerning and leading up to "product alerts issued by Bell and Rolls-Royce about [the Bell 407] helicopter model on January 23, 2014," some four months after trial concluded. West I, 2014 DNH 208, 34. Though issued after trial, West contended that the bulletins (1) disclosed a previously unreported FOSSA mechanism, leading to a higher probability of FOSSA events; and (2) revealed knowledge about the Bell 407's faults, which defendants possessed before trial but did not disclose. See id. at 45-49. Assuming (without, at that juncture, deciding) that West could prove the defendants' culpability in withholding that information, the court concluded that he could not "prove[] by a preponderance of the evidence that this misconduct 'substantially interfered with [his] ability fully and fairly to prepare for, and proceed at, trial.'" West I, 2014 DNH 208, 50-51 (quoting Anderson v. Cryovac, Inc., 862 F.2d 910, 926 (1st Cir. 1988)).

West appealed that decision.[2]  As discussed more fully
infra, the First Circuit Court of Appeals decided that the court
erred in its Rule 60(b)(3) analysis "by placing the burden on
West to prove substantial interference in spite of [this
court's] assumption that the defendants culpably withheld
materials that should have been produced in discovery."  West
II, 803 F.3d at 72-73.  Given this court's assumption of
misconduct, the Court of Appeals concluded, that burden ought to
have rested with the defendants.  Id. at 69.

Upon remand, the court granted West's motion for
additional, targeted discovery into two issues, specifically:
"1) whether additional documents responsive to West's first
production request related to the January 2014 FOSSA bulletin
were in defendants' possession yet withheld from production; and
2) West's eventual obligation to respond to defendant's likely
effort to rebut a presumption of substantial interference with

---

[2] West also appealed several of this court's other decisions
rendered before, during, and after the trial.  The Court of
Appeals considered, and thus only found error in, only this
court's application of Rule 60(b)(3).  The court, accordingly,
does not address the other issues raised in the plaintiff's
appeal.

West's case."[3]  Based on that discovery, West again moved for a new trial.[4]

Because the defendants have not carried their burden of demonstrating that certain of these previously-withheld materials did not substantially interfere with West's case, the court grants West's motion.  Specifically, the defendants have not demonstrated that West was not prejudiced by the withholding, by the defendants, of information they possessed before trial.

## I.   **Applicable legal standard**

As discussed <u>supra</u>, Rule 60(b)(3) allows a party to obtain relief from a judgment on the basis of misconduct by an opposing party.  The First Circuit Court of Appeals "take[s] an expansive view of 'misconduct,'" concluding that, "depending upon the circumstances, relief on the ground of misconduct may be justified 'whether there was evil, innocent or careless, purpose.'"  Anderson, 862 F.2d at 923 (internal citations omitted).  In order to obtain such relief, "the moving party must demonstrate misconduct . . . by clear and convincing evidence, and must then show that the misconduct foreclosed full

---

[3] Order on Remand (doc. no. 449) at 2 (citing West II, 803 F.3d at 72).

[4] Document no. 464.

and fair preparation or presentation of its case." Id. The
error in question "must have been harmful -— it must have
'affect[ed] the substantial rights' of the movant." Id. at 924
(quoting Fed. R. Civ. P. 61). Furthermore, the misconduct must
have "substantially . . . interfered with the aggrieved party's
ability fully and fairly to prepare for and proceed at trial."
West II, 803 F.3d at 67 (quoting Anderson, 862 F.2d at 924).
The aggrieved party

> need not prove that the concealed material would
> likely have turned the tide at trial. Substantial
> impairment may exist, for example, if a party shows
> that the concealment precluded inquiry into a
> plausible theory of liability, denied it access to
> evidence that could well have been probative on an
> important issue, or closed off a potentially fruitful
> avenue of direct or cross examination.

Anderson, 862 F.2d at 925.

Intentional misconduct, such as "where concealment was
knowing and purposeful," raises the presumption that "the
suppressed evidence would have damaged the nondisclosing party."
Id. That presumption comes into play "where discovery material
is deliberately suppressed," because the absence of that
evidence "can be presumed to have inhibited the unearthing of
further admissible evidence adverse to the withholder, that is,
to have substantially interfered with the aggrieved party's
trial preparation." Id. Once such a presumption is raised by
intentional misconduct, the Anderson court made clear, the

burden shifts to the non-disclosing party to refute the presumption "by clear and convincing evidence demonstrating that the withheld material was in fact inconsequential." Id. That "threshold becomes easier to climb" where "the documents have been intentionally withheld but not destroyed," because "the documents themselves may constitute clear and convincing proof that no prejudice inured." Id. at 926.

Though this court "[a]ssum[ed] that West could prove the defendants' culpability by clear and convincing evidence" for purposes of its Rule 60(b)(3) analysis, West I, 2014 DNH 208, 50, it did not assume that he could prove intentional misconduct, and so did not shift the burden to the defendants to prove that the withheld evidence was inconsequential. Id. at 50-51. Indeed, the court is still not convinced that the defendants' behavior amounts to misconduct under Rule 60(3)(b), let alone that it amounts to the intentional misconduct contemplated by the Anderson court in crafting its burden-shifting presumption.[5]

---

[5] The court notes that most of the evidence upon which West relies was created after the discovery cutoff deadline, and well after the parties' agreed-upon cutoff dates for document collections, at least as this court understood them. The court further credits counsels' representations that, in light of this, they were not made aware of certain of those documents before or during trial -- especially those created during trial.

Though the court certainly acknowledges, and in no way seeks to deemphasize, parties' obligations to supplement their discovery

Nevertheless, the Court of Appeals concluded that this
court erred in failing to shift that burden to the non-
disclosing parties in light of an assumption of any misconduct
at all.  See West II, 803 F.3d at 69.  And, as discussed in its
Order on Remand, the court views the inquiry into defendants'
misconduct as closed by West II,[6] and is bound to follow the law
as set forth in that opinion.

Accordingly, presuming intentional misconduct, the court
considers whether the defendants have carried their burden of
rebutting the presumption that their behavior substantially
interfered with West's ability fully and fairly to prepare for
and proceed at trial.  It concludes that they have not.

## II.  **Analysis**

West now contends that several categories of documents or
information, previously withheld, prevented him from fully and
fairly preparing for and proceeding at trial on his claims for

---

responses in a timely manner when new information becomes
available, see Fed. R. Civ. P. 26(e)(1)(A), the court hesitates
to label the conduct in this case "intentional misconduct."

[6] See Order on Remand (doc. no. 449) at 3-4.  The court draws
this inference, in particular, from the conclusion by the Court
of Appeals that "thanks to counsel's own admissions" at oral
argument before the Circuit panel "there can be no doubt that
the defendants failed to produce information not due to
oversight, inadvertence, or counsel's own ignorance of its
existence.  Rather, the decision not to produce the information
was a conscious, deliberate choice."  West II, 803 F.3d at 71.

negligence and strict liability.[7]  These include:  (1) an opinion
by a Bell employee, Michael Vautour, made two weeks before jury
selection, concerning the cause of West's helicopter crash;
(2) evidence from investigations into other Bell 407 helicopters
that experienced FOSSA events, resulting in the January 2014
bulletins and in proposed remedial measures, suggesting that
(a) FOSSA was the result of a systematic defect, and (b) a FOSSA
event could occur without being recorded by the helicopter's
incident recorder.  Concluding that a new trial is warranted in
light of the Vautour opinion evidence, the court need not
address the other categories of documentation here.[8]  It will,

---

[7] West also contends that he was prejudiced as to certain other
of his theories of liability, including those based on a failure
to warn, on which the court granted defendants' motions for
judgment as a matter of law, see West I, 2014 DNH 208 at 52-57,
a design defect, and negligence in failing to upgrade the
software in West's Bell 407.  See West's Mem. in Supp. of
Renewed Mot. for New Trial (doc. no. 467-1) at 20-23.

[8] Defendants characterize much of the evidence on which West
relies as resulting from their investigations into three
helicopter crashes that occurred in 2013.  In its initial
consideration of West's motion for a new trial, the court ruled
that West waived his opportunity to conduct additional discovery
into those investigations when he became aware of them during
trial but declined to conduct that discovery at that time.  West
I, 2014 DNH 208, 34-36.  West did not challenge that ruling on
appeal.

At oral argument, West argued that such a waiver was uninformed
-- that is, he did not know the extent to which the
investigations informed the defendants about the potential
causes of FOSSA, or the probability of how often it would occur,
and thus could not intelligently waive his right to discovery of
those issues.  Cf. West's Reply (doc. no. 489) at 6 n. 10.  The

however, at the appropriate time, entertain the appropriate motions with respect to any evidence that the parties seek to exclude from that trial and whether the evidence supports allowing the jury to consider plaintiff's failure-to-warn theory.

To the court's (and presumably counsel's) great surprise, Bell disclosed the existence of Vautour's opinion after remand, when the court considered, and ultimately granted, West's request for additional, "targeted" discovery.[9]  The court was therefore unable to consider this evidence in its initial analysis of whether undisclosed discovery warranted a new trial. The discussions surrounding Vautour's opinion, however, place that evidence squarely into the defendants' consideration of the causes -- or potential causes -- of hard landings experienced by other Bell helicopters, which resulted in the remedial measures

---

court need not address that issue definitively here, because defendants make no such argument about the Vautour evidence.  It observes, however, that technical information arising from those investigations, leading as it did to the defendants' decision to institute a systematic fix to the overspeed circuit, suggests that the landscape is sufficiently different from that viewed by the plaintiff in the midst of trial that the court may reconsider that decision.

[9] See Order on Remand (doc. no. 449) at 2-4.  Bell did not object to the reopening of discovery into the issues West sought to explore, and at the same time informed the court -- and West -- about the existence of this evidence, which it produced.  See id. at 2 n.4.

outlined by the January 2014 bulletins.[10]  Accordingly, it falls within the categories of evidence requested by the plaintiffs as discussed by the Court of Appeals as the potential basis for relief from judgment under Rule 60(b)(3), see West II, 803 F.3d at 70-72, and ultimately enhances the potential probative value of that other evidence.

As discussed supra Part I, the defendants bear the burden of demonstrating, by clear and convincing evidence, that the Vautour opinion evidence was inconsequential, such that its absence did not prejudice West at trial.  See West II, 803 F.3d at 67-68.  They attempt to meet this burden in two ways.  First, defendants argue, Vautour's lack of professional and technical expertise to diagnose the cause of West's hard landing rendered his opinion inadmissible for failure to qualify as an expert's opinion, see Fed. R. Evid. 702, or as unduly prejudicial, see Fed. R. Evid. 403.[11]  At oral argument, Bell's counsel further argued that Vautour's statements constitute inadmissible hearsay, see Fed. R. Evid. 802, because he did not make those statements in a manner consistent with the exception for

---

[10] See, e.g., West's Mot. Ex. 4 (doc. no. 469) at BH-WEST-PT-000008, 14, 90-91.

[11] See Bell's Opp. (doc. no. 473) at 6-7; Rolls-Royce's Opp. (doc. no. 475) at 10-12; Goodrich's Opp. (doc. no. 477-1) at 9-12.

statements of an opposing party's agent, see Fed. R. Evid. 801(d)(2)(D).[12]  Second, the defendants contend, even were it admissible, Vautour's lack of expertise and the fact that Rolls-Royce, which manufactured the FADEC, purportedly disabused him of his opinion not a month later, would render evidence of his opinion inconsequential to the outcome of the trial.[13]

None of the defendants' challenges to the evidence's admissibility succeeds, however; nor can the court conclude that the defendants have "adduce[d] clear and convincing evidence demonstrating that the withheld material was in fact inconsequential," and as such did not "substantially interfere[] with [West's] ability fully and fairly to prepare for and proceed at trial." West II, 803 F.3d at 67-68 (quoting Anderson, 862 F.2d at 924-25).

A.    **The Vautour evidence**

On July 31, 2013, two weeks before jury selection and unbeknownst to this court at that time or at the time of West's motion for a new trial, Bell employee Michael Vautour circulated

---

[12] Though this court ordinarily does not consider arguments made for the first time at oral argument, see Doe v. Friendfinder Network, Inc., 540 F. Supp. 2d 288, 304 n.19 (D.N.H. 2008), because the Rule 702 analysis depends on whether Vautour's statements amount to admissions of an opposing party, the court addresses that question below.

[13] Bell's Opp. (doc. no. 473) at 6.

a chart that he described as "a high level summary of the 'known' ECU failures caused by the Tantalum Capacitor."[14]  He circulated this chart in response to a request from another Bell employee, Ryan Weeks, for "a high-level summary of all the known and potential incidents . . . ."[15]  This chart included West's hard landing.  Accompanying Vautour's inclusion of the plaintiff's accident as a capacitor-caused ECU failure, he noted that West's event "[h]as not been confirmed yet as a capacitor failure incident, but I am involved in litigation where the plaintiff's [sic] are claiming it was. . . . All indications of data I have reviewed points to a capacitor failure."[16]  Such a failure, Vautour posited, may have "caus[ed] in-flight FALSE OVERSPEED SYSTEM TRIP (FOST) events . . . ."[17]  As Vautour noted, his opinion was consistent with the plaintiff's theory of the case.  That theory was specifically contested during the pretrial litigation and the trial that followed.

---

[14] West's Mot. Ex. 1 (doc. no. 468) at BH-WEST-PT-000001.

[15] Id. at BH-WEST-PT-000005.

[16] Id. at BH-WEST-PT-000004-5.

[17] West's Mot. Ex. 2 (doc. no. 468-1) at BH-WEST-PT-000018.  The terms FOST and FOSSA both refer to a false indication of an overspeed event that triggers the closure of the fuel shutoff valve, and thus can be -- and herein will be -- used interchangeably.

A little over a month later, on the third day of trial, Vautour reiterated to his colleagues that the event concerning West's aircraft "is suspected to be a Tantalum Capacitor failure, but due to the ongoing litigation RRC/TECS have never confirmed that. I personally am stating that because I am directly involved in the litigation."[18] He further theorized that "the event may be contributed to two different factors, one was the Ta[ntalum] capacitor which cause[d] the FOST event and the second was the crystal oscillator, as similar to other crystal failure events, nothing was recorded on the ECU data (i.e. no FADEC faults.)"[19]

At his deposition taken during the reopened period of discovery, Vautour testified that he formed his opinion that West's hard landing was the result of a FOSSA event caused by a faulty tantalum capacitor after seeing a graph of data from the incident recorder, showing that "the fuel flow suddenly dropped off for no apparent reason."[20] At that time, he testified, he was aware of previous events involving the same failure mode,[21]

---

[18] West's Mot. Ex. 4 (doc. no. 469) at BH-WEST-PT-000043. At oral argument, counsel for Goodrich confirmed that "TECS" refers to Triumph Engine Control Systems, Goodrich's successor.

[19] Id.

[20] West's Mot. Ex. 5 (doc. no. 468-3) at 57-58.

[21] Id. at 60.

and was not aware of any "other reasons why fuel flow would
diminish like that."[22]  Hence, he included the West incident on a
list of "known" FOSSA events.

On the last day of the trial, October 1, 2013, Tony
Randall, Bell's Chief of Flight Safety, forwarded Vautour's
chart to Doug Cook, a Chief Service Engineer for Rolls-Royce.[23]
Randall characterized the chart as "count[ing] all suspect
[tantalum capacitor] issues."[24]  This chart included Vautour's
observation that West's hard landing "[h]as not been yet
confirmed as a capacitor failure incident," and that "[a]ll
indications of data I have reviewed points to a capacitor
failure," but excludes Vautour's commentary on the litigation.[25]
Cook responded, noting that Vautour's list was "very
disconnected to our records," and attaching "the list [he] sent
to Mike Vautour that was supposed to clear things up," which did
not include the West event.[26]  The next day, the engineer who
performed Rolls-Royce's internal investigation of West's
accident, Thomas Ronan, noted that "[o]f the 7 events listed [by

---

[22] Id. at 58.

[23] West's Mot. Ex. 3 (doc. no. 468-2) at BH-WEST-PT-000250-53.

[24] Id. at BH-WEST-PT-000250.

[25] Id. at BH-WEST-PT-000252.

[26] Id. at BH-WEST-PT-000250, 253.

Bell] as involving [tantalum capacitors], only three were actual [tantalum capacitor] issues," and concluded that Bell was relying on "incorrect data."[27]

## B.   Rule 802

"Out-of-court statements, not made under oath, are generally regarded as hearsay evidence and, thus, are presumptively inadmissible to prove the truth of the matter asserted." Shervin v. Partners Healthcare Sys., Inc., 804 F.3d 23, 42 (1st Cir. 2015) (citing Fed. R. Evid. 801(c), 802).  The Federal Rules of Evidence exclude from the definition of hearsay, and therefore from this rule, statements "offered against an opposing party" that were "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D).

The defendants argue that Vautour's statements as to the cause of West's hard landing contained in the "high-level summary" chart he prepared were made outside of the scope of his employment with Bell.  The evidence strongly suggests otherwise. Here, Vautour prepared his chart at the request of Ryan Weeks, a director of program management for Bell.[28]  Weeks requested that

---

[27] Rolls Royce's Opp. Ex. 8 (doc. no. 487-22).

[28] West's Mot. Ex. 1 (doc. no. 468) at BH-WEST-PT-000001, 005; Bell's Opp. Ex. A (doc. no. 481) at 54.

Vautour set forth "all the known and potential [ECU failure] incidents", and that he include "[m]odel, tail number, incident dates, owner/customer names, the outcome of accident, the known or assumed failure, and anything else that is relevant."[29] Vautour complied.

Quoting Vautour's deposition testimony taken during the reopened discovery period, Bell argues that the opinions offered in Vautour's chart were not within the scope of his employment because "the determination of the cause of accidents" was not "part of [Vautour's] job at Bell"[30] and that his opinion that West's hard landing was "possibly" a FOSSA event was only his "personal opinion."[31]  Such a conclusion requires an exceedingly narrow construction of the scope of an employee's employment, and one that is unsupported by the caselaw.  See Woodman v. Haemonetics Corp., 51 F.3d 1087, 1094 (1st Cir. 1995) ("Rule 801(d)(2)(D) does not contemplate . . . that the statement be shown to have been made by the employee at the instance of [his] employer . . . but only that the declarant's statement concern matters within the scope of [his] agency or employment."); cf. Shervin, 804 F.3d at 44 (statements made by doctor inadmissible

---

[29] West's Mot. Ex. 1 (doc. no. 468) at BH-WEST-PT-000005.

[30] Bell's Opp. Ex. A (doc. no. 481) at 279.

[31] Id. at 276.

against medical center under Fed. R. Evid. 801(d)(2)(D) when made outside the scope of his role on its executive committee).

The court is disinclined to parse Vautour's statements so finely when they were so clearly made in response to a request from his employer for information he was reasonably expected to possess as part of his employment -- specifically, as Bell's counsel explained during oral argument, because he was expected to maintain regular communications with Rolls-Royce about known events.  Accordingly, it concludes that the defendants have not established that the rule against hearsay excludes Vautour's opinion as to the cause of West's hard landing.[32]

### C.    Rule 702

Rule 702(a) permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to "testify in the form of an opinion if," among other requirements, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Vautour, Bell

---

[32] The defendants also raised, at oral argument, the point that Vautour's statement would not serve as an admission by the other two defendants -- that is, as an opposing party's statement, it amounts to an admission only by Bell.  Even were Vautour's opinion not admissible for its truth as against Rolls-Royce and Goodrich, it still could be used to demonstrate at their knowledge of that opinion.  A limiting instruction could properly contextualize it.  See Fed. R. Evid. 105.

argues, does not qualify as an expert and thus cannot admissibly offer such an opinion.[33]

Rule 702, however, is inapplicable here. Vautour's opinion, is offered not as an expert's opinion, but as an admission by Bell, his employer. See Fed. R. Evid. 801(d)(2)(D). Such admissions enjoy "freedom from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge . . . ." Fed. R. Evid. 801(d)(2), advisory committee notes (1972); see also Owens v. Atchison, T. & S. F. Ry. Co., 393 F.2d 77, 79 (5th Cir. 1968), cert. denied, 393 U.S. 855 (1968) ("It is well settled that the opinion rule does not apply to party's admissions."). As authority to the contrary, Bell cites only the holding by the Seventh Circuit Court of Appeals in Aliotta v. Nat'l R.R. Passenger Corp., 315 F.3d 756, 763 (7th Cir. 2003), that admissions in the form of opinions must satisfy Rule 702. That conclusion has been heavily criticized as "[a] truly disturbing and incorrect statement," 30B Michael H. Graham & Kenneth W. Graham, Jr., Fed. Prac. & Proc. Evid. § 7015 n.12 (2014 ed.), and other courts have declined to adopt it, In re Mirena IUD Prod. Liab. Litig., 202 F. Supp. 3d 304, 314 n.16 (S.D.N.Y. 2016). This court does

---

[33] Bell's Opp. (doc. no. 473) at 6-7.

likewise, unsupported as it is by authority from the First
Circuit Court of Appeals.

Accordingly, as an admission by an opponent's agent,
Vautour's statement is not subject to "the restrictive
influences of the opinion rule," Fed. R. Evid. 801(d)(2),
advisory committee notes (1972), and would not have been
excluded under Rule 702.

### D.    Rule 403

The defendants next contend that the lack of Vautour's
opinion did not prejudice West because it would have been
excluded as unduly prejudicial to the defendants.  "The court
may exclude relevant evidence if its probative value is
substantially outweighed by a danger of . . . unfair prejudice,
confusing the issues, [and] misleading the jury." Fed. R.
Evid. 403.  "Even an admission by a party opponent is subject to
exclusion under Rule 403 if its potential for unfair prejudice
overwhelms its probative worth." Williams v. Drake, 146 F.3d
44, 48 (1st Cir. 1998).[34]

In essence, the defendants argue that Vautour's opinion
lacks probative value because Vautour was not qualified to offer

---

[34] The court notes here that, despite the possibility that a
party admission may be excluded from evidence based on unfair
prejudice, the defendants have cited no precedents, either
described by a trial court or reviewed by an appellate court, of
such an exclusion.

it.[35]  To this end, the defendants highlight Vautour's testimony that he was not employed to determine the cause of accidents[36] and that, with respect to the FADEC, he would "always defer to [Rolls-Royce] for confirmation of failure of components within their engine systems . . . ."[37]  Indeed, he testified that he changed his mind as to the cause of West's hard landing not long after his September 10 emails when, on September 12, he received a chart prepared by Rolls-Royce that did not list West's event as a FOSSA event.[38]

As West points out, however, Vautour's opinion as to the cause of West's hard landing was not without support.  Vautour testified that he drew the conclusion that West's Bell 407 suffered a FOSSA event based on a graph of incident recorder data, which showed that the fuel inputs "suddenly dropped off for no apparent reason."[39]  At the time he viewed that graph, Vautour was aware of "previous events" that "involved the failure of a Tantalum Capacitor," leading to a FOSSA event.[40]  He

---

[35] Bell's Opp. (doc. no. 473) at 7; Goodrich's Opp. (doc. no. 477-1) at 12.

[36] Bell's Opp. Ex. A (doc. no. 481) at 279.

[37] Id. at 240; see also id. at 104-05.

[38] Id. at 95-96.

[39] Id. at 55-58.

[40] Id. at 58-59.

was not aware of any "other reasons why fuel flow would diminish like that," and so concluded that West's helicopter also suffered a FOSSA event.[41]  That he viewed that graph for "a brief few minutes,"[42] like the evidence of Vautour's lack of expertise on the subject of FOSSA and his general reliance on Rolls-Royce to confirm FOSSA events, goes to the weight, not the admissibility of his opinion.  And Vautour's purported "mind change," while something a jury could accept or reject, evidently did not prevent Randall, Bell's Chief of Flight Safety, from forwarding Vautour's chart and his conclusion to Rolls-Royce on October 1, 2013, characterizing it as "count[ing] all suspect [tantalum capacitor] issues."[43]  This evidence could be viewed by a jury as corroborating Vautour's July 31 opinion, repeated and explained by Vautour himself on September 10, thus increasing its probative value.

The defendants have not identified any undue prejudice that outweighs the probative value of Vautour's opinion, or that it would mislead the jury to an extent warranting exclusion under Rule 403.  Bell argues only that the prejudicial nature of Vautour's statements lies in the fact that a jury might return a

---

[41] Id. at 58-59.

[42] Id. at 276.

[43] West's Mot. Ex. 3 (doc. no. 468-2) at BH-WEST-PT-000250.

verdict in West's favor "based on an unsubstantiated opinion by
an individual who was unqualified to offer it" if the jury "had
been advised that a Bell 'engineer' was of the opinion that a
problem with the FADEC had cause[d] West's accident."[44]  Of
course, such statements would be prejudicial, in the sense that
any adverse evidence has some prejudicial tendency.  But any
prejudice to defendants from Vautour's "unsubstantiated opinion"
or his lack of qualifications is mitigated by counsel's
effective questioning of Vautour about his qualifications and
the bases for his opinion at his deposition.  Presumably,
counsel would have done the same at trial, although the
effectiveness that such cross-examination of Vautour would have
had on the original trial is difficult to assess because
defendants' counsel may not have been armed with the impeachment
material they have now developed, such as Vautour's deposition
transcript and contradictory testimony of other Bell and Rolls-
Royce employees.[45]  The bases of Vautour's opinion and his
credibility go, therefore, to the weight of the evidence, not
its admissibility.  Thus, the defendants have not demonstrated
that this evidence would not have been admissible at trial.

---

[44] Bell's Opp. (doc. no. 473) at 7.

[45] See infra, Part II.E.

**E.   Effect on West's preparation for, and proceeding at, trial**

Concluding that the Rules of Evidence cited by defendants would not have rendered the Vautour evidence inadmissible at trial, the court turns to evaluating whether West's lack of this information "substantially . . . interfered with [West's] ability fully and fairly to prepare for and proceed at trial." West II, 803 F.3d at 67 (quoting Anderson, 862 F.2d at 925).  To "substantially interfere," the undisclosed evidence need not have been "likely [to] have turned the tide at trial." Anderson, 862 F.2d at 925.  It need have only "precluded inquiry into a plausible theory of liability, denied [West] access to evidence that could well have been probative on an important issue, or closed off a potentially fruitful avenue of direct or cross examination." Id.  As discussed supra Part I, and in accordance with direction from the Court of Appeals, the court presumes that the undisclosed Vautour statements "substantially interfered" with West's ability to fully and fairly proceed at trial.  The defendants bear the burden of producing clear and convincing evidence to the contrary.  They have not done so.

Vautour included the West event on his list of "'known' ECU failures caused by the Tantalum Capacitor," explaining that "[a]ll indications of data [he had] reviewed points to a

capacitor failure."[46]  This evidence is probative of at least one important issue in the case -- specifically, whether the defendants' negligence caused West's accident.[47]  As an admission by an employee of one of the defendants as to the cause of the accident, based on a review of the ECU data from West's helicopter, this evidence may well have induced a jury to conclude that West's hard landing was caused by a FOSSA event. This is especially so as the admission in this instance was made by an employee who (1) was expected to possess information sufficient to produce a summary of events known or suspected to have been caused by faulty capacitors, and (2) described himself as "involved in litigation where the plaintiff's are [sic] claiming" that as the cause of the accident -- in other words, an admission by a defendant or one of its employees expressly endorsing the plaintiff's theory of the case.[48]

The lack of this evidence also "closed off a potentially fruitful avenue of direct or cross examination." West II, 803 F.3d at 67 (quoting Anderson, 862 F.2d at 925).  Specifically, in addition to the point made immediately above, it prevented

---

[46] West's Mot. Ex. 1 (doc. no. 468) at BH-WEST-PT-000001-05.

[47] This evidence may also be relevant to the plaintiff's strict liability claim and other of the plaintiff's theories, connected as it is to the defendants' analyses of FOSSA events leading to the January 2014 bulletins and a systematic resolution.

[48] Id. at BH-WEST-PT-000004-05.

West from exploring, whether on direct or cross-examination, the defendants' motivations for possibly failing to disclose West's hard landing as a FOSSA event. Vautour explained that the event "is suspected to be a Tantalum capacitor failure, but due to the ongoing litigation RRC/TECS have never confirmed that. I personally am stating that because I am directly involved in the litigation."[49] It is reasonable to infer from this statement -- particularly from Vautour's use of the third-person in the first sentence and first-person in the second sentence -- that at least Rolls-Royce (and possibly other defendants) made a point not to confirm what caused West's hard landing while the litigation was pending, so as to avoid a potentially liability-triggering finding. It is equally reasonable to infer that West would have explored this avenue of questioning at trial, and that it would potentially be fruitful insofar as it may impact the merits of the defendants' position, the defendants' consideration of liability exposure, rather than solely considering safety, when pursuing, developing, and disclosing important, safety-implicating information, as well as the defendants' general credibility.

The relevant question here is not how this evidence fares after dissection and rebuttal (both internally, among the

---

[49] West's Mot. Ex. 4 (doc. no. 469-1) at BH-WEST-PT-000043.

defendants, and in litigation) in the months and years following a trial.  Nor is the question how the author of the statement justifies or explains it during a deposition taken three years later, in the presence of his employer and his employer's attorneys facing a motion such as that raised here.  The question is, instead, whether plaintiff's lack of the evidence "closed off a potentially fruitful avenue of direct or cross examination" at the trial that was held.  West II, 803 F.3d at 67 (quoting Anderson, 862 F.2d at 925).  Here, a jury could have regarded Vautour's internal company correspondence as speaking to the cause of West's hard landing mere days before trial, with specific reference to the litigation itself -- that is, he specifically referenced the plaintiff's claim and validated it as such, not merely as a potential FOSSA event or capacitor failure.

Moreover, had Vautour's statements been produced in advance of or during trial, the court would have allowed it to be presented over any objection based on Rules 403 or 702.  See supra, Part II.B-D.  The defendants, at that time, may not have had the opportunity to take a fine-toothed comb to Vautour's experience and motivations, and as such, any cross examination they conducted may not have been as thorough as that presented in Vautour's deposition transcript.  This presumption supports the conclusion that a jury, weighing Vautour's opinion and that

of the plaintiff's experts against Ronan's and the defendants' experts, may have given more weight to Vautour's opinion than a jury in a new trial might.  But Anderson and the Court of Appeals do not instruct this court to prognosticate the effect of the evidence on the next trial, but rather on the trial in which discovery was withheld.

Rolls-Royce argues, based on Ronan's testimony, that Vautour drew his conclusions from "incorrect data," which Ronan corrected after it was brought to his attention and after the trial had concluded.[50]  While a jury may decide to give more weight to Ronan's testimony in light of his experience and his greater familiarity with evidence connected to the West event, the court cannot conclude that it _would_ have done so.  It is also unclear just how the evidence would have affected Ronan's views _before_ and _during_ trial, if at all, when the evidence demonstrates that he did not become aware of it until _after_ the trial concluded.[51]

---

[50] Rolls Royce's Opp. (doc. no. 475) at 11-12.  See also id. Ex. 8 (doc. no. 487-22).  Goodrich echoes the arguments of its co-defendants.  See Goodrich's Opp. (doc. no. 477-1) at 9-12.

[51] The issue is further clouded, in retrospect, by Randall's forwarding of Vautour's chart to Rolls-Royce on the final day of trial, without removing West's event.  Like Ronan's conclusion, that evidence also would not have been available at time of trial.

Accordingly, the defendants have not carried their burden of "adduce[ing] clear and convincing evidence demonstrating that the withheld material was in fact inconsequential," and as such did not "substantially interfere[] with [West's] ability fully and fairly to prepare for and proceed at trial." West II, 803 F.3d at 67-68 (quoting Anderson, 862 F.2d at 924-25).

III. **Conclusion**

The court GRANTS West's renewed motion for a new trial.[52]  A new trial is warranted on the basis of defendants' withholding Vautour's statements before the first trial on this matter, both as those statements stand alone and as they impact the other, bulletin-related evidence requested by the plaintiffs -- evidence that, like Vautour's statements, concerns the defendants' efforts to discern the causes -- or potential causes -- of hard landings experienced by other Bell helicopters, leading to the remedial measures outlined by the January 2014 bulletins.

Concluding that the Vautour evidence warrants a new trial, the court need not -- and therefore does not -- exhaustively examine, or rule on the admissibility of, the other evidence that West contends supports his request.  To the extent defendants contend any of that evidence is inadmissible at

---

[52] Document no. 464.

trial, the court will entertain motions in limine at the
appropriate time.  The parties shall confer and jointly file a
proposed pre-trial schedule on or before April 24, 2017.

      **SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge


Dated:    April 10, 2017

cc:  Joan A. Lukey, Esq.
     Justin J. Wolosz, Esq.
     John P. O'Flanagan, Esq.
     L. Robert Bourgeois, Esq.
     Brian M. Quirk, Esq.
     James M. Campbell, Esq.
     Kathleen Marie Guilfoyle, Esq.
     Jason L. Vincent, Esq.
     Phillip S. Bixby, Esq.
     Marie J. Mueller, Esq.
     Martha C. Gaythwaite, Esq.
     R. Matthew Cairns, Esq.